UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARK A. LOYA

     Petitioner,

v.                                     Case No. 8:06-cv-1903-T-23MSS

SECRETARY, Department of Corrections,

     Respondent.
_____/

## O R D E R

Mark Loya petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and challenges the validity of his state conviction for trafficking in methamphetamine. Numerous exhibits ("Respondent's Exhibit __") support the response.

A two count information (Respondent's Exhibit 21, Vol. I, pp. 1-4) charged Loya and a codefendant with conspiracy to traffic in methamphetamine and trafficking in methamphetamine. A jury found Loya guilty of trafficking in methamphetamine.[1] Loya received a fifteen year minimum mandatory sentence. The state appellate court affirmed (Respondent's Exhibit 3) Loya's conviction and sentence in a per curiam decision without a written opinion. The state court denied (Respondent's Exhibit 12) Loya's subsequent state Rule 3.850 motion to vacate after an evidentiary hearing, and

---

[1] The prosecutor dropped the conspiracy charge before trial (Respondent's Exhibit 21, Vol. I, pp. 107-09).

the state appellate court affirmed (Respondent's Exhibit 17) the denial in a <u>per</u> <u>curiam</u>

decision without a written opinion.  The state appellate court denied (Respondent's

Exhibit 19) Loya's motion for rehearing.  This Section 2254 petition followed.

## FACTS[2]

Loya owed a friend, Jeff Green, some money.  In late September, 1998, Green

asked Loya to acquire some drugs for his cousin, Maggie.  Green was acting as a

confidential informant and Maggie was actually an undercover officer.  Loya arranged

with co-defendant Magano,[3] his supplier, for a sale from Magano directly to Green.  A

week later, Green asked Loya to arrange another sale.  At the second sale, Magano

refused to "front" the drugs, so Loya purchased the drugs and later sold them to Green.

Approximately ten days later Maggie contacted Loya for a third sale, a larger quantity of

half-a-pound of methamphetamine.  Green told Loya that he would pay Loya $200 and

consider the debt paid if Loya would arrange the deal.  Loya was arrested after he

acquired and sold the methamphetamine to Maggie.

Loya admits that he is a drug user but contends that he is not a drug trafficker.

Loya contends that he was entrapped by an agent (Green) who was cooperating with

the police to reduce charges Green faced.

## STANDARD OF REVIEW

Because this action commenced after April 24, 1996, Section 2254(d), as

amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

---

[2] This summary of the facts derives from Loya's brief on direct appeal (Respondent's Exhibit 1) and the federal petition for the writ of habeas corpus (Doc. 1).

[3] Loya mis-spells his co-defendant's name as "Magano" instead of "Magana."

governs this proceeding.  Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210

(11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).  Section 2254(d), which creates a

highly deferential standard for federal court review of state court adjudications, states in

pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law,
>> as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an
>> unreasonable determination of the facts in light of the
>> evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court

interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal
> habeas court to grant a state prisoner's application for a writ of habeas
> corpus with respect to claims adjudicated on the merits in state court.
> Under § 2254(d)(1), the writ may issue only if one of the following two
> conditions is satisfied -- the state-court adjudication resulted in a decision
> that (1) "was contrary to . . . clearly established Federal Law, as
> determined by the Supreme Court of the United States," or (2) "involved
> an unreasonable application of . . . clearly established Federal law, as
> determined by the Supreme Court of the United States."  Under the
> "contrary to" clause, a federal habeas court may grant the writ if the state
> court arrives at a conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case differently than this
> Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. 685, 694 (2002); Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").

Loya's conviction and sentence were affirmed on direct appeal in a per curiam decision without a written opinion and the denial of his subsequent Rule 3.850 motion to vacate was likewise affirmed on appeal in another per curiam decision without a written opinion. The state appellate court's per curiam affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003).

Loya bears the burden of overcoming a state court factual determination by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies only to a finding of fact, not a mixed determination of law and fact. Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001). Consequently, a presumption of correctness attaches to the finding of facts in the trial court's rejection of Loya's post-conviction claims of ineffective assistance of counsel.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Loya claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)). Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to Strickland, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice. Strickland v. Washington, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims v. Singletary, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v. Washington, 466 U.S. at 690. "[A] court deciding an actual

ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland v. Washington, 466 U.S. at 690. Strickland requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland v. Washington, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Loya must demonstrate that counsel's error prejudiced the defense. Strickland v. Washington, 466 U.S. at 691-92. To meet this burden, Loya must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland v. Washington, 466 U.S. at 690-91. Loya cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992). Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' ") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)). See also Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).

Loya alleges a single ground of ineffective assistance of counsel, divided into five subclaims. The subclaims are not distinctly different because Loya mixes the same facts and allegations amongst the several subclaims.

Claim A

Loya alleges that his trial counsel rendered ineffective assistance by failing to present evidence to support both an entrapment defense and a jury instruction on entrapment. He claims that he advised counsel of a series of events involving prior drug deals with a confidential informant that would have established an entrapment defense. Loya argues that he lacked a predisposition to commit the crime for which he stands convicted and that counsel's failure to investigate left Loya with no viable defense.

The state post-conviction court rejected this claim in Loya's Rule 3.850 motion after an evidentiary hearing:

> An evidentiary hearing on the defendant's motion for postconviction relief
> was held in Bartow on October 2, 2003. The state was represented by
> Attorney Elizabeth A. Williams and the defendant was represented by
> Charles J. Traina, Esquire.

In his motion Mr. Loya cites eight specific reasons why his trial counsel, Tony Dodds, Esquire, rendered ineffective assistance. For the most part they amount to little more than second guessing trial strategies that ultimately failed. The most troubling question is why Mr. Dodds filed no pretrial motions to flesh out the viability of the entrapment defense. His defense throughout was, as he put it, a "quasi entrapment defense" yet, in the end, the court declined to give an entrapment jury instruction. It is now argued that pretrial motions to force the prosecution to disclose the identity of the confidential informant and/or assert entrapment as a matter of law should have been filed. Even if unsuccessful, it is argued, these motions would have served the purpose of demonstrating whether entrapment had a chance of success. Mr. Dodds testified that he considered such motions but concluded that the facts and applicable law, as he knew them, would not justify the filing. Mr. Dodds also testified, and I believe him, that much of Mr. Loya's testimony concerning his relationship to the confidential informant, Mr. Green, was never made known to him pre-trial.

Notwithstanding the above, the real problem facing Mr. Dodds was the fact Mr. Loya made a hand-to-hand sale of a trafficking amount of methamphetamine to an undercover police officer who was recording the transaction. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) requires Loya to show two things: first, that defense counsel performed deficiently and second that this deficient performance actually prejudiced the defense. Mr. Dodds was stuck with the fact that his client did what he was charged with doing. When the prosecution refused to engage in plea negotiations, he was forced to advance the only possible defense even though the facts negated it. It is my decision that Mr. Loya has failed to establish that Mr. Dodds'[s] performance was deficient. I concede that decision is debatable. What is not debatable is that Mr. Loya has failed to show that the outcome would have been any different regardless [of] what Mr. Dodds did, or did not, do.

(Respondent's Exhibit 12, pp. 218-19).[4]

Loya testified at the evidentiary hearing (Respondent's Exhibit 10, pp. 117-21 and 124) that he advised counsel about prior drug deals with confidential informant Jeff

---

[4] Loya presented eight claims of ineffective assistance of counsel to the state court in his Rule 3.850 motion (Respondent's Exhibit 5). The state post-conviction court held an evidentiary hearing (Respondent's Exhibit 10) on all eight claims and denied relief (Respondent's Exhibit 12) in a brief order without individually discussing each claim.

Green.  Loya further testified (Respondent's Exhibit 10, pp. 117, 125, and 128) that

counsel disregarded any information about Green.  Loya's counsel, Tony Dodds,

testified (Respondent's Exhibit 10, pp. 175-77) that he discussed with Loya the viability

of an entrapment defense and that he requested an entrapment instruction, a request

the trial judge denied.[5]  Dodds testified that Loya failed to disclose information about

informant Green as Loya claims.[6]

---

[5] Dodds testified:

Q:     During the course of the trial you requested a jury instruction on entrapment; is
       that correct?

A:     That's correct.

Q:     Was the jury instruction given?

A:     No.

Q:     And that was a decision by the Court to not allow that?

A:     That's correct.

Q:     At that point did you discuss with Mr. Loya whether there were any other available
       defenses?

A:     Well, we had already talked about that prior to even going to trial, as to what other
       defenses would be available and as I indicated a few minutes ago, there are very
       limited defenses available on something like this.  He and I talked about it and we
       knew going into it that there was a very slim likelihood that that instruction was
       going to be given but it was the best chance that he had with the way the facts
       were going to unfold in the case.

(Respondent's Exhibit 10, pp. 177-78).

[6] Dodds testified:

Court:  My questions, I think, relate to the testimony that Mr. Loya gave this morning.
. . .

Court:  He emphasize . . . the relationship he had with Jeff Green . . . . with reference to
        Green, he says that Green was simply an acquaintance he had known for about
        six months.  Somehow he became indebted to Green, owed Green several
        hundred dollars.  Green apparently got in some trouble with the law and the law
        apparently sent Green to Loya for the purpose of setting up a drug deal.  That
        (continued...)

In denying relief on this ineffective assistance claim, the state post-conviction court found counsel's testimony more credible than Loya's testimony.  The state  court's credibility determination is presumed correct.  Baldwin v. Johnson, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the petitioner's].") cert. denied, 526 U.S. 1047 (1999); Devier v. Zant, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d).") cert. denied, 513 U.S. 1161 (1995).  Relying only upon his unsupported contention, Loya fails to overcome the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  Loya fails to meet his burden of proving that the state court unreasonably applied Strickland or unreasonably determined the facts. 28 U.S.C. § 2254(d).

---

[6](...continued)

> Green pressured him again and again and again to provide drugs to Green's sister, Maggie, who was [Detective] Tepedino.  That he would not have provided the drugs to Maggie except that he owed Green the money, and Green was leaning on him for the money.  And indeed on the date of the transaction of the major one, Green had said to him that if you treat my sister right here, give her the drugs, that I'm going to forgive the debt and I'll even give you $200.  Did Loya tell you that before trial?

Dodds: No.

Court: He goes on to point out that to tie in the earlier sales, the two earlier sales on I think October the 5th, that this was simply part of Green's pressure on him to get him to provide his sister, who apparently needed some money, she had some problems, too.  You didn't hear anything about that?

Dodds: No.

(Respondent's Exhibit 10, pp. 202-03).

<u>Claim B</u>

Loya alleges that his trial counsel rendered ineffective assistance by failing to investigate an alternate "lack of culpability" defense.  Loya identifies seven items of evidence counsel should have pursued.  He argues that counsel should have used an audio tape of the drug transaction between Loya and Detective Tepadino to impeach Tepadino's testimony that only she and Loya were present during the transaction, and counsel should have impeached Tepadino by showing that, contrary to Tepadino's testimony, the sweat pants he was wearing had no pockets.  Loya claims that counsel never attempted to contact co-defendant Magano and never inquired about Magano's plea deal.  Loya also claims that counsel should have spoken with informant Green to "find out what [Green] had to say."  The state post-conviction court rejected each of these allegations in Loya's Rule 3.850 motion as "little more than second guessing trial strategies that ultimately failed."  (Respondent's Exhibit 12 at 218).

Counsel testified during the evidentiary hearing that he advised Loya about available defenses:

Q:    Do you remember what your preliminary, early discussions with Mr. Loya were regarding this case and possible defenses?

A:    Yes, in fact, he had several cases at that point in time.  There was a possession, there was traffic - - another trafficking case in which there was two counts of trafficking and then there was this case, as well.  And I had him go through each one of those as best he could remember, or at least as best he could detail with me to give me some preliminary indications as to what had happened on them.

At that point we don't get into a great deal of detail because we're waiting on the discovery materials to come in from the State.  So, I usually wait to go into detail until after we have the police reports.

Q:     Okay, so once you received the discovery which included the police report, you would go through those with the Defendant, is that correct?

A:     Yes.

Q:     So, in this case when you went through those with Mr. Loya, do you remember what your discussions primarily focused on?

A:     Yeah, trying to figure out a way to deal with the allegations in it.

Q:     What do you mean by allegations?

A:     Well, in a trafficking case there's only a few defenses that are really available to deal with.  One, either the person doesn't do it at all or is not the person that was named as being charged.  Or two, you've got the weights that are involved.  Or three, whether there is some other legal defense.

       And in this particular case based on what Mr. Loya told me on the day of the major trafficking case—and I call . . . major the one that includes the 200-plus grams of methamphetamines—he had indicated that the officer had called him several times during the course of the day.  And we started talking about whether entrapment would work or not under those circumstances even at the early stages.

       It was much later on that we went into more detail with how that would have to work or whether it would work at all.  Particularly in light of the fact that he had had prior transactions with this officer, it was going to be difficult but it was probably the only thing he had as a defense at that point.

. . .

Q:     [After the trial judge denied Loya's request for an entrapment instruction], did you discuss with Mr. Loya whether there were any other available defenses?

A:     Well, we had already talked about that prior to even going to trial, as to what other defenses would be available and as I indicated a few minutes ago, there are very limited defenses that are even available on something like this.  He and I talked about it and we knew going into it that there was a very slim likelihood that that

> instruction was going to be given but it was the best chance that he
> had with the way the facts were going to unfold in the case.
>
> . . .
>
> Q: Did you ever discuss potential remedies for the fact that the
> entrapment instruction was not given, was not going to be given by
> the Court with Mr. Loya?
>
> A: Yes, in fact, I told him what the remedy would be ultimately would
> be to do an appeal afterwards, it was setting the record for
> purposes of trying to do an appeal of that issue. He and I had
> already discussed prior to trial the fact that that instruction probably
> would not be given. It's one that we would ask for and try to get,
> but it would probably not be given.
>
> . . .
>
> Q: One final thing regarding the entrapment and your discussions with
> Mr. Loya, did you explain to him the theory of entrapment and that
> the theory of entrapment means that you have to admit that you
> actually did the crime, it's a legal defense to the crime that you're
> charged with; did you discuss that with him?
>
> A: Yes.
>
> Q: And he was comfortable with that being his defense?
>
> A: Yes.

(Respondent's Exhibit 10, pp. 174-78, 181, and 187).

Loya apparently suggests that his supplier (his co-defendant) was more culpable than he, which he terms a "lack of culpability" defense. Loya fails to show that the assertion of such a defense would have resulted in a different outcome at trial. The state court in rejecting this claim neither unreasonably applied Strickland nor unreasonably determined the facts. See 28 U.S.C. § 2254(d)(1) and (2).

One of Loya's specific factual allegations warrants further discussion. Loya alleges that counsel should have used an audio tape of the "major" drug transaction

between Loya and Detective Tepadino to impeach Tepadino's testimony that only she and Loya were present during the transaction. This claim is clearly meritless because during trial counsel asked Tepadino on cross-examination about the presence of another person at the sale, and at the Rule 3.850 evidentiary hearing, counsel testified that he elected not to replay the audiotape in an effort to minimize Loya's participation in the sale.[7]

Counsel's decision whether to impeach the witness and how to proceed with cross-examination is a strategic decision entitled to deference. Dorsey v. Chapman, 262 F.3d 1181 (11th Cir. 2001), cert. denied 535 U.S. 1000 (2002). The only question is whether counsel's strategic decision was "reasonable." Minton v. Sec'y, Dep't of Corr., 271 Fed. Appx. 916, 918 (11th Cir. 2008) ("The Supreme Court has 'declined to articulate specific guidelines for appropriate attorney conduct and instead has

---

[7] Counsel testified:

Q:    Going back to Detective Tepadino . . . . She testified that and an audiotape was admitted and played to the jury regarding that transaction, that issue. On cross-examination you questioned her about the presence of a third person; do you recall that?

A.    I believe so. I mean, I seem to recall that there was some cross on that, but I couldn't tell you the extent of it.

Q.    Did you ever make any effort to have the audiotape replayed in conjunction with cross-examining her to point out to the jury the possibility that there was a third person on the tape?

A.    No, but I think I asked her about that there was a third party on the tape and she went into that already. So, I – no, I didn't replay the tape again, but I believe it was already played. And quite frankly, when the State – from the statements that were on that tape, I'm not real sure I wanted the thing to be replayed again anyway for the jury just to hammer home Mr. Loya's participation level at that point.

(Respondent's Exhibit 10 at 91).

emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.' ") (quoting <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003).  Trial counsel provided a reasonable basis for opting not to replay the audiotape, <u>i.e.</u>, not allowing the jury to again hear the extent of Loya's participation in the sale.  Loya fails to show both deficient performance and prejudice as required by <u>Strickland</u>.

<u>Claim C</u>

Loya alleges that his trial counsel rendered ineffective assistance by coercing Loya to not testify at trial because "it would be dangerous to his defense."  Loya contends that his testimony was "vital" to establish the entrapment defense.  Loya further represents that "counsel never informed the petitioner that his right to testify is personable only to him and that counsel must abide by the petitioner decision to testify if he so chose" and that he "did not even realize that he had a choice" whether to testify. Petition at 30 (Doc. 1).  These allegations of misconduct are refuted by the records from both the trial and the evidentiary hearing in the Rule 3.850 proceeding, where trial counsel testified as follows:

> Q:  Regarding Mr. Loya taking the stand in his own defense, did you discuss that with him?
>
> A:  Yes.
>
> Q:  And what were the discussions with Mr.  Loya?
>
> A:  Well, before the trial even began I had indicated to Mr. Loya that if he had taken the stand, or was to take the stand, it was going to be dangerous because we had those two previous transactions excluded from evidence for purposes of this proceeding.  If he took the stand and in any way tried — slipped when he was on the

stand, those two would probably then be coming in, there'd be an opening of the door to get those in. Secondarily, there'd be almost no purpose in putting him on the stand because there was little, if anything, he could do to try to rebut what the State's witnesses were going to say.

So, even going into the trial we anticipated not putting him on the stand. Once the case closed, recess was taken. I went and talked to Mr. Loya again, reiterated to him again I don't see any benefit in putting him on the witness stand, and he concurred. And I believe that the Court even inquired to that. I don't know without looking at the transcript, but I believe the Court even inquired if he wanted to take the stand or not.

Q:      Did Mr. Loya ever indicate to you what the contents of his testimony would be if he had taken the stand?

A:      Well, based on our discussions all the way from the time I started representing him, all the way through the trial, what I had been told was that he would have to admit that he was there for the transaction and participated in the transaction. There was never any indication to me that he didn't participate in it.

Q:      And did that go -- that would have to be the case for you to be arguing entrapment; is that correct?

A:      Yes.

Transcript of Evidentiary Hearing, Respondent's Exhibit 10 at 181-83. Counsel's

recollection was correct that the trial judge questioned Loya about his decision to not

testify.

Mr. Dodds:      I previously discussed with my client the ability for him to testify in his own defense, and he represented to me he does not wish to testify.

The Court:      Mr. Loya, I'll have you stand. . . .
Now you discussed testifying or not testifying with your attorney?

A:      Yes, ma'am.

- 16 -

| | |
|---|---|
| The Court: | You understand that the right to either do so or the right not to do so is your right? |
| A: | Yes, ma'am. |
| The Court: | It's not Mr. Dobbs' right, it's not my right, it's your right. |
| A: | Yes, ma'am. |
| The Court: | And while of course you want to confer with counsel, that final decision over whether to do so or not is yours. |
| A: | Yes, ma'am. |
| The Court: | Do you understand that? |
| A: | Yes, ma'am. |
| The Court: | And what is your decision in that regard? |
| A: | I don't want to testify, ma'am. |
| The Court: | Okay. Any questions you have in that regard? |
| A: | No ma'am. |
| The Court: | Okay. Thank you, sir. |
| A: | Thank you. |

Transcript of Trial Proceedings at 263-65. Consequently, the record refutes Loya's claims of coercion and lack of understanding about his right to testify. Loya fails to show both deficient performance and prejudice as required by Strickland.

Claim D

Loya alleges that his trial counsel rendered ineffective assistance by excluding evidence of Loya's prior drug sales. Loya, Green (his friend whom Loya did not know was assisting the police) and "Maggie" (undercover officer Tepadino) consummated

three sales of methamphetamine in September and October, 1998. The largest quantity of methamphetamine was the subject of the third sale. The third sale was tried separately from the two earlier sales. The conviction challenged in this federal petition is from the third sale. Trial counsel successfully excluded from evidence any testimony about either the two earlier sales or Loya's admission to selling drugs for the preceding four months. Transcript of Trial Proceedings at 101-06, Respondent's Exhibit 21 vol. I. As a consequence, trial counsel succeeded in precluding the jury from hearing or seeing any evidence to indicate that the third sale was not Loya's first time to sell drugs. Trial counsel explained his reasoning for excluding all testimony about the earlier sales.

> Well, the reasoning behind that is if those two transactions were admitted, that would all but preclude being able to try to even argue entrapment because part of the issues of arguing entrapment is to show a lack of propensity or predisposition to commit the offense alleged. And if a jury and/or a judge is trying to deal with the issues of entrapment, if you got two previous sales and both of those were trafficking amounts as well, they just weren't as large of a trafficking amount, I think that would absolute[ly] refute your efforts to try to argue entrapment even if it is a modified form of an entrapment. So, to let those things in would have gutted what little defense would have existed at that point.

Transcript of Evidentiary Hearing at 184, Respondent's Exhibit 10. Because trial counsel's strategy was reasonable, Loya cannot meet the Strickland test. See Roe v. Flores-Ortega, 528 U.S. 470, 481 (2000) ("The relevant question is . . . whether counsel's choices were . . . reasonable.").

Claim E

Loya argues that the cumulative effect of trial counsel's errors amount to ineffective assistance of counsel. Loya initially raised this issue on the appeal from the denial of post-conviction relief. The respondent argues procedural default because

Loya failed to assert the claim in the lower court proceeding.  Recognizing this defect, in his reply Loya voluntarily dismisses the claim.  Reply at 11 (Doc. 7).

* * *

To summarize this case, trial counsel's pursuing an entrapment defense without evidence of the earlier sales or Loya's testimony was a reasonable strategy. The State's written closing argument following the state post-conviction evidentiary hearing succinctly summarizes why trial counsel performance was neither deficient nor prejudicial.

> In further support of the entrapment defense, and seeking to avoid the introduction of any evidence of any prior drug use, prior drug charges, knowledge of drugs or drug sales, Mr. Loya and Mr. Dodds agreed that Mr. Loya should not testify at the underlying trial.  Now Mr. Loya complains that this hindered his defense.  During the course of the evidentiary hearing Mr. Loya admitted that he used drugs prior to this sale, he admitted that the State did not introduce him to Mr. Magana, the man who provided the drugs to complete the sale.  He admitted that the State did not introduce him to Mr. Green, the man who introduced him to Detective Tepedino.  He admitted to the prior purchase of drugs. He admitted to witnessing others purchase drugs. He admitted to frequenting locations where drugs were being sold.  All of this testimony would have been elicited during his trial to rebut the entrapment defense had Mr. Loya taken the stand.  Mr. Dodds knew that and made a strategic decision to advise Mr. Loya that his defense would have a better chance of success without the jury learning this information. Furthermore, Mr. Loya was questioned by the trial court regarding his decision not to testify and stated under oath that it was his own decision.

(Respondent's Exhibit 11 at p. 4-5).

Accordingly, Loya's petition for the writ of habeas corpus (Doc. 1) is **DENIED**.

The clerk shall enter a judgment against Loya and close this case.

ORDERED in Tampa, Florida, on November 6, 2009.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE